MARY J. FREDENBURGH, Respondent, *v.* RUSSELL B. BIDDLE-
COM et al., Executors, etc., Appellants.

Upon a reference, under the statute, of a disputed claim against an estate the referee sustained the claim. His report was set aside by the Special Term, but on appeal to the General Term the order of Special Term was reversed and judgment ordered for the claimant on the report, *held,* that the judgment was appealable to this court; but that only the questions of law raised by the exceptions could be here considered ; that, so far as the order of the Special Term was based upon its view of the facts, this court was to be governed by the findings of the referee, where there was any evidence to sustain them.

Plaintiff's claim was for " services as nurse, domestic and housekeeper." She was in the employ of S., defendant's testator, as a servant receiving weekly wages. In addition to her other duties, she assisted in taking care of A., an invalid son of S. She claimed, and the referee found, that S. promised and agreed to pay her in addition to her weekly wages the sum of $1,000, if she would stay and take care of A. until his death, which she did. A. died in 1872. The referee also found that S. made his will in June, 1876, by which he gave to his executors $1,000, in trust, to

pay the interest to plaintiff during her life ; she left his employ in April, 1878; he died in August, 1878. The executors denied the promise and claimed that the real understanding was that plaintiff should be compensated for her services by a provision in the will of S., and evidence was given tending to sustain their position. Upon the trial, one B., who drew the will, as a witness for defendant, testified that he often talked with plaintiff, both before and after the will was made. He was then asked whether he ever heard of her making any claim for the $1,000 of the testator during his life-time, or heard her express any dissent from the provision made in the will. He answered in the negative. This answer was subsequently, on motion of plaintiff, stricken out. Another witness testified that plaintiff, after the will was made, said she was to have the use of $1,000; that witness stated she thought this was more than the testator intended, and would make trouble, and that plaintiff replied : " She thought she ought to have it." The witness was then asked, if plaintiff said any thing as to what this was given to her for; this was objected to and objection overruled. The answer was that plaintiff stated it was because she had stayed and helped in times of need, during sickness. This answer was, on motion, stricken out. *Held*, error ; that the answers stricken out bore legitimately upon the controverted question as to the making of the alleged contract.

(Argued January 25, 1881, decided April 26, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made January 6, 1880, reversing an order of Special Term which set aside the report of a referee, and directed a new trial, and confirming said report, and directing judgment thereon.

The nature of the reference and the material facts appear in the opinion.

*Wayland F. Ford* for appellant. The referee erred in striking out declarations of the plaintiff tending to show that, by contract and arrangement with the testator, the legacy was to compensate for the same services for which she now claims payment. (*Patterson* v. *Patterson*, 13 Johns. 379 ; *Quackenbush* v. *Ehle*, 5 Barb. 469; *Robinson* v. *Raynor*, 28 N. Y. 494; *Reynolds* v. *Robinson*, 64 id. 589 ; 22 Alb. L. J. 395 ; *Chamberlaine* v. *Chamberlaine*, 2 Freeman's Ch. 34, A. D. 1676 ; *Drakeford* v. *Wilks*, 3 Atkyns, 535 ; Case 197, 1747 ;

*Oldham* v. *Litchfield,* 2 Vern. 596 ; *Reech* v. *Kennigate,* Ambler, 67 ; *Barrow* v. *Grenage,* 3 Ves. Jr. 151 ; *Byron* v. *Guilford,* 4 id. 6 ; *Chester* v. *Urwick,* 23 Beav. 411 ; *Strickland* v. *Aldridge,* 9 Ves. Jr. 519 ; *Alderson* v. *Maddison,* Eng. H. Ct. of Jus., June 2, 1880 ; 43 L. T. [N. S.] 349 ; 23 Alb. L. J. 6 ; *Williams* v. *Crary,* 8 Cow. 246 ; 4 Wend. 446 ; *Clark* v. *Bogardus,* 2 Edw. Ch. 387.) This is a special proceeding, and the representatives of the estate can prove any defense they have without pleading it. (*Roe* v. *Boyle,* N. Y. Ct. of App., 22 Alb. L. J. 173.) Where a debt is, by agreement, to be paid by testamentary provision, and the provision by will only pays a part, recovery can only be had for the balance. (*Reynolds* v. *Robinson,* 64 N. Y. 589 ; 22 Alb. L. J. 395.) From the settlement and the acquittance, which was the voluntary act of the plaintiff, an absolute presumption arises that the plaintiff had been paid and satisfied for the services of all previous years. (Coke upon Lyttleton, 373, A ; *Palmer* v. *Stabick,* Siderfin, 44 ; *Pennant's Case,* Part 3 Coke's, 65 ; *Decker* v. *Livingston,* 15 Johns. 479 ; *Patterson* v. *O'Hara,* 2 E. D. Smith, 56 ; *Sperry* v. *Miller,* 16 N. Y. 414 ; *Bennett* v. *Buchan,* 76 id. 386 ; *Phelps* v. *Vischer,* 50 id. 69.)

*Watson M. Rogers* for respondent. The will providing for payment of debts rebuts any presumption that might otherwise have arisen that the legacy was intended as payment. (*Fort* v. *Gooding,* 9 Barb. 371.) The legacy being less valuable than the debt no presumption arises that it was payment. (2 Story's Eq., §§ 1119—1123 ; *Phillips* v. *McCombs,* 53 N. Y. 494 ; Williams on Executors, 1113.) Parol evidence is only admissible to rebut a presumption arising by legal construction against the terms of the will. (3 Greenleaf's Ev., §§ 366–7 ; *Man* v. *Man,* 14 Johns. 1 ; 2 Williams on Executors, 4.) Parol evidence of the admissions of a party are competent evidence only when parol evidence of the fact sought to be shown by such admissions would be competent. (*Sherman* v. *The People,* 13 Hun, 575–7.) A will cannot be corrected because

the testator misapprehended its effect. (2 Story's Eq., § 1531 ; *Arthur* v. *Arthur*, 10 Barb: 9–16.) Plaintiff had earned $1,000, and no agreement to accept a lesser sum, or a testamentary provision less vaulable, could operate as payment. (2 Bouv. Dict. 311 ; *Bragg* v. *Pierce*, 53 Me. 65 ; *Bank* v. *DeGrauw*, 23 Wend. 342 ; *Hawley* v. *Foote*, 19 id. 516 ; *Tilton* v. *Alcott*, 16 Barb. 568 ; *Panzerbeiter* v. *Wydell*, 21 Hun, 161 ; *Redfield* v. *Holland Purchase Ins. Co.*, 56 N. Y. 354.) If the evidence could not have supported the defense it was not error to strike it out. (*People* v. *Gonzalez*, 35 N. Y. 40 ; *Vanderwort* v. *Gould*, 36 id. 644.) A receipt of a particular sum not " in full " will not support a plea of accord and satisfaction. (*McCullen* v. *Hart*, 3 Dev. [N. C.] L. 219.) At most, the conversation sworn to by defendants' witness Snell was a declaration in behalf of testator's estate, and could not operate as proof of any thing in favor of the estate. (*Phillips* v. *McCombs*, 53 N. Y. 496 ; *Weller* v. *Weller*, 4 Hun, 197.) Evidence that plaintiff, in April, 1878, admitted she had "settled" with the testator for all matters outside the weekly wages, furnished no evidence of payment. (*Fort* v. *Gooding*, 9 Barb. 371, 377.) Plaintiff was entitled to interest. (*Mercer* v. *Vose*, 67 N. Y. 56 ; *Harwood* v. *Lauremore*, 50 Md. 414 ; *Dunning* v. *Swarts*, 9 How. Pr. 434 ; *Woodin* v. *Bagley*, 13 Wend. 453 ; *Harrison* v. *Allen*, 3 Bing. 4 ; *Gansvoort* v. *Nelson*, 6 Hill, 389 ; *Smith* v. *Velie*, 60 N. Y. 106.) ·

RAPALLO, J. The respondent presented to the appellants, as executors of Stephen Scoville, deceased, a claim against the estate of their testator, for $1,000, for " services as nurse, domestic and housekeeper as per agreement with Stephen Scoville." This claim was presented October 20, 1878, the testator having died in August of the same year, leaving a will dated June 13, 1876.

The claim, being disputed by the executors, was referred pursuant to the statute. The referee reported in favor of the claimant for $1,000 with interest from November 30, 1872, to

the date of the report (January 30, 1879), amounting in all to $1,431.66.

Motions were made at Special Term by the claimant to confirm and by the executors to set aside the report. The court at Special Term set it aside and granted a new trial. On appeal to the General Term the order of the Special Term was reversed and judgment for the claimant was ordered, for the amount found due by the referee.

The point is taken that the case is not appealable to this court. Without discussing the grounds stated in the respondent's points we think it is appealable, but that on this appeal we can only review the questions of law raised by the exceptions, and that, in so far as the order of the Special Term was based upon its view of the facts, we must be governed by the findings of the referee, provided there is any evidence to sustain them.

The referee found that the testator was a farmer and that the claimant was in his employ as a servant for about twenty-one years ending in April, 1878, at an agreed price of one dollar per week for her services. That he had two invalid sons, Worthington and Anson, and the plaintiff, in addition to her ordinary household work, assisted in taking care of them. That after the death of Worthington the testator promised and agreed with the plaintiff to give her, in addition to her wages of one dollar per week, the sum of $1,000 if she would stay and take care of Anson till his death, which agreement plaintiff performed on her part. That Worthington died about 1863 and Anson died in November, 1872. That on the 13th of June, 1876, the testator made his last will, which among other things provided that after his lawful debts were paid he gave to his executors $1,000 in trust, to be by them invested and the interest paid semi-annually to the claimant during her life. That there was nothing in the will making said legacy in lieu of the $1,000 promised. That the claimant was informed before the will was made that the testator was about to will her the use of $1,000 for life, and after the will was made and prior to the testator's death, which occurred in August, 1878, she was informed that such provision had been made for her. That no

demand was made by her of the testator for the $1,000 promised her; that no part of it has been paid; and that she has not accepted the said legacy in lieu thereof.

The referee further found, at the request of the executors, that the claimant remained in the service of the testator as his housekeeper from the time of Anson's death in 1872, until some time in 1878; that he settled with and paid her for the last year's work, and that there was no evidence that in his life-time she ever demanded, asked or claimed of him any greater or further sum than she received. He refused, however, to find that the agreement between her and the testator was that he should make provision for her after his death, or that he should leave her by his will the interest on $1,000 during her life, and that the same was to be in satisfaction of her claim.

There was no direct evidence of the agreement or promise of the testator to pay to the claimant the $1,000, but she relied upon proof of admissions made by him to third parties, that he had made such a promise, and that he had afterward concluded to leave her only the interest on $1,000. This evidence precludes us from holding that the finding of the referee was wholly unsupported, but nevertheless the question was at issue whether he had made the promise as alleged, and whether the real understanding between the parties was not that she should be compensated for her services by a provision in his will; and there were circumstances in the case tending to sustain the position taken by the executors in this respect. Any competent evidence bearing upon this controverted point should have been received, and the executors now complain that evidence of that character was rejected and stricken out.

Upon the theory of the claimant, the $1,000 became due her from the testator in 1872, when Anson died, and she has recovered with interest from that time. Still it appeared that she continued several years afterward in the service of the testator, receiving her wages of $1 per week without making any further demand. There was also evidence that when she settled with the testator for her last year's wages, there was a balance of $8 found due to her, and she declared that was all the

testator owed her. That just prior to the making of the will she was informed by Mr. Biddlecom that she would be remembered in the will to the amount of the interest on $1, 000 during life, or about one dollar and a half per week. Biddlecom testified that he often saw and talked with her, both before and since the will was made, and being asked whether he ever heard of her making any claim of $1,000 against testator in his life-time, or heard her express any dissent from the provision the testator made for her, answered the question in the negative. This answer was, on motion of the claimant's counsel, stricken out, and an exception was taken. Another witness, Mrs. Louise Scoville, testified that she heard the claimant say, in the presence of the testator, that he had an idea of changing his will, and testator said he would like to have Mr. Biddlecom come and change it. That after this, claimant said the will had been changed and she was to have the use of $1,000. Witness told her that she thought it was more than testator intended and she feared it would make trouble, and the claimant said she thought she ought to have it. Witness was then asked whether claimant said any thing upon the subject of what this was given to her for, and this question was objected to, on the ground that it was an attempt to vary the terms of a written instrument by parol; the objection was overruled, and witness answered that claimant said it was because she had stayed there and helped in times of need, during sickness in the family. On this answer being given, claimant's counsel moved to strike it out on the same ground upon which it had been objected to, and on the further grounds that it was incompetent to prove a contract with the testator, and that the plaintiff having performed the contract on her part, no agreement by her to accept a less sum in a testamentary provision could operate as a satisfaction of the whole debt.

The motion was granted, and the counsel for the executors excepted.

If there had been a conceded debt due to the claimant by the testator in his life-time, and the sole object of the question had been to prove, by the admission of the claimant, that the

intention of the testator was to give the legacy in discharge of such debt, or that the claimant had agreed to accept the legacy in satisfaction of the debt, the points argued by the counsel for claimant in support of his motion to strike out this evidence would arise. But we think that the answer of Mrs. Scoville, stricken out, as well as that of the witness Biddlecom, had a different bearing, and affected, legitimately, the controverted question whether there ever was any such contract between testator and the claimant, or any such indebtedness, as she now sets up. The fact that she understood that the legacy was intended to compensate her for having stayed and helped during sickness in the family, and so stated to the witness, coupled with the circumstances that she made no claim for such compensation under any contract in the testator's life-time, and made no complaint that the legacy was for less than she was entitled to under any such contract, was, we think, material, and tended to negative the idea that any such contract existed. When, in answer to Mrs. Scoville's remark about the legacy being larger than the testator intended, the claimant said that she thought she ought to have it, it is not natural to suppose that she thought herself entitled to double compensation for the same services, or that the testator intended to make such double compensation. If she understood that he intended the provision in the will as her compensation, and at the same time knew that the alleged contract existed, would she not have made some complaint or suggestion that he proffered, as a gift, less than she was entitled to by her contract, instead of simply saying that she thought she ought to have the legacy? Was not the claim that she ought to have the legacy, knowing that it was given as a compensation for her services in time of sickness, inconsistent with the idea that she believed herself entitled by contract to a much larger compensation? These considerations, it is true, are not decisive, and different inferences may be drawn from her declarations and conduct; but we think they legitimately bear upon the question whether the claimant understood that the testator had made a binding contract with her to pay her $1,000 on the death of Anson, upon

which contract she had relied, and that the testimony, which was stricken out, should, therefore, have been retained in the case and weight given to it, as material upon that issue. Whether it was also available for the purpose of showing an acceptance of the legacy, in satisfaction of her claim, or for any other purpose, it is not necessary to determine. If competent for any purpose, it should not have been stricken out.

The striking out of this evidence by the referee, being an error which entitled the appellants to a new trial, we have not passed upon the other questions which have been argued.

The order of the General Term and the judgment entered thereon should be reversed, and the order of the Special Term should be affirmed.

Ordered accordingly.

All concur.

Judgment affirmed.